UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THE RESOURCE MINE, INC.,

                 Plaintiff,

-against-

GRAVITY MICROSYSTEM LLC, GRAVITY MICROSYSTEM PRIVATE LIMITED, VINAY PRAKASH SINGH, VIVEK GAUR, JOHN DOES 1-10, and NAVEEN KHARB,

                 Defendants.

**MEMORANDUM OF DECISION AND ORDER**
09-CV-0573 (LDH) (SIL)

---

LaShann DeArcy Hall, United States District Judge:

    Counterclaim/Third-Party Plaintiffs Gravity Microsystem LLC ("Gravity USA") and Gravity Microsystem Private Limited ("Gravity India") (collectively, "Plaintiffs") bring the instant action against Counterclaim Defendant The Resource Mine, Inc. ("Resource Mine") and Third-Party Defendants Dalip Buchar and Allen Vyas (collectively, "Defendants") asserting counterclaims and third-party claims under New York law for conversion, breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, tortious interference with contract, tortious interference with prospective business advantage, fraud, constructive fraud, and an accounting. Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss the complaint in its entirety.

## UNDISPUTED FACTS[1]

Vivek Gaur and Vinay Prakash Singh established Gravity India in 2003. (Pls.' Reply to Defs.' Opp. to Pls.' Rule 56.1 Stmt. ("Pls.' Reply 56.1") ¶¶ 1-2, ECF No. 142.) Gravity India provided information technology consulting services. (Third Am. Compl. ¶ 2, ECF No. 77.) In 2006, Singh and Gaur were equal partners and shareholders in Gravity India, but the two did not enter into a formal shareholders' agreement. (Pls.' Reply 56.1 ¶¶ 3-4.) Around 2006 or 2007, Anupam Jaiswal, a friend of Singh's, was given an unspecified number of shares in Gravity India. (*Id.* ¶¶ 5-6.) In 2005, Gravity USA was formed in the United States as a wholly-owned subsidiary of Gravity India. (*Id.* ¶¶ 7-8.) Gravity India "handled" the shares of Gravity USA. (*Id.* ¶ 8.) Gravity USA had no individuals on its payroll; no capital infusion; and no loans taken, or funds raised on its behalf. (*Id.* ¶¶ 35-39.) The relationship between Gravity USA and Gravity India was never reduced to writing. (*Id.* ¶¶ 10-11.)

## I. FORMATION OF THE JOINT VENTURE

In 2006, Gravity India decided to expand its business. (*Id.* ¶ 9.) Gaur, Singh, and Jaiswal sought to work with an American company that: (1) was well-versed in the process of filing for U.S. H1B visa petitions to allow Indian employees to relocate to the U.S.; (2) was able to manage payroll for U.S. employees consistent with applicable regulations; and (3) could "cash flow finance" payroll employees. (*Id.* ¶ 14.) Resource Mine was a technology staffing company. (Third Am. Compl. ¶ 19.) An employee of Resource Mine in India introduced Singh and Gaur to Buchar and Vyas, the principals of Resource Mine in the United States. (Pls.' Reply 56.1 ¶ 12.)

---

[1] The following facts are taken from the parties' statements of material fact pursuant to Local Rule 56.1 and annexed exhibits. Unless otherwise noted, the facts are undisputed.

Between February 13, 2006, and March 24, 2006, Resource Mine and Gravity USA entered into a joint venture agreement (the "JVA") through a series of email and telephone exchanges. (*Id.* ¶ 16.) Following the formation of the joint venture, Jaiswal became an employee of Resource Mine. (*Id.* ¶ 17.)

Under the JVA, the joint venture partners agreed to undertake various tasks and responsibilities. Gravity India agreed to identify potential employees in India; hire those employees in India; and relocate those employees to Gravity USA, if those employees were capable of being sponsored for immigration purposes by Resource Mine. (*Id.* ¶ 22.) Singh and Gaur were responsible for sourcing the employees from India to be assigned to the joint venture. (*Id.* ¶ 23.) Gaur, Singh, and Jaiswal were to determine how much to pay employees while they were employed in India. (*Id.* ¶ 24.) Jaiswal was to determine how much to pay employees when they were relocated to the U.S. (*Id.*) Jaiswal was also responsible for identifying customers and clients for the joint venture in the U.S., and servicing the joint venture's clients. (*Id.* ¶ 33.) Resource Mine was responsible for applying for H1B visas for employees, managing the payroll for employees, and ensuring the joint venture's compliance with applicable laws and regulations. (*Id.* ¶ 30.)

The JVA distinguished between two types of employees, which it referred to as resources: (1) shared resources; and (2) non-shared resources. (*Id.* ¶¶ 41-42.) Expenses related to shared resources were offset against any income from joint-venture clients. (*Id.* ¶ 41.) These expenses included salary, taxes, costs associated with H1B visa applications, and employee housing. (*Id.* ¶¶ 49, 50.) Following the recouping of expenses, any remaining profit was to be divided evenly between Resource Mine and Gravity USA. (*Id.* ¶ 41.) For non-shared resources, Resource Mine was to pay expenses upfront, with Gravity India to reimburse them upon the

presentation of invoices. (*Id*. ¶ 42.) The only non-shared resources under the joint venture were Jaiswal and a friend of Gaur and Singh. (*Id*. ¶ 43.) Resource Mine was required to pay the salaries of joint-venture resources even when those resources were not engaged on client projects. (*Id*. ¶ 44.)

Gravity India received details of all payments received by Buchar and Jaiswal on the 25th of each month and was able to share these details with Singh and Gaur the next day. (*Id*. ¶ 52.) Gravity India also received time sheets from the joint venture's resources and was aware of the billing rates for each client of the joint venture ("JV Clients"). (*Id*. ¶ 53.) The joint venture held two bank accounts to maintain client payments: (1) the "Chase Bank" account and (2) the "Bank of America" account. The Chase Bank account was intended for deposits of the JV Clients' monies for the shared resources. (*Id*. ¶ 45.) The Bank of America account was intended for deposits from JV Clients for the non-shared resources. (*Id*. ¶ 46.) Buchar and Jaiswal had access to the Chase Bank account but did not have access to the Bank of America account. (*Id*. ¶¶ 45-46.)

## II. DISSOLUTION OF THE JOINT VENTURE

The joint venture operated without issue in 2006 and 2007. (*Id*. ¶ 54.) In 2008, Jaiswal announced that he was resigning from Gravity India and Gravity USA. (*Id*. ¶ 66.) Around this time, payments and reimbursements to Resource Mine for the non-shared resources were in arrears. (*Id*. ¶ 55.) Following Jaiswal's departure, Gaur and Singh managed the affairs of Gravity USA. (*Id*. ¶ 69.) On July 11, 2008, Defendants sent a letter to Plaintiffs informing Plaintiffs that, as of July 7, 2008, Resource Mine was owed $74,763.52 for non-shared resources (the "July 11 Letter"). (Pls.' Mot., Ex. 12 at 14-15, ECF No. 158-20.)² The July 11 Letter further

---

² Citations to pages in the record refer to the Electronic Case Filing System ("ECF") pagination.

stated: "Effective immediately, Resource Mine will not be able to assign any personnel to Gravity, who is not already on an ongoing project.  In absence of a satisfactory payment arrangements [sic], Resource Mine reserves the right to approach the clients of the ongoing projects and request direct payment, for Resource Mine personnel that are currently assigned to such projects/client." (*Id*.)  At some point in July 2008, Singh met with all of the JV Clients in the US.  (Pls.' Reply 56.1 ¶ 89.)

Between July 2008 and September 2008, Gaur and Singh directed the JV Clients to pay them directly, to ensure that Resource Mine did not receive payments. (*Id.* ¶¶ 72-73.)  Singh and Gaur opened a new bank account for joint-venture customer deposits at HSBC for the purpose of re-routing JV Client payments away from Resource Mine. (*Id.* ¶¶ 77-79, 83.)  All funds deposited in the HSBC account were funds paid to the joint venture by JV Clients.  (Pls.' Reply 56.1 ¶ 88.)  Around this same time, Singh made his wife a member of Gravity USA although she did not work for the company, opened a new Citibank account in Gravity USA's name, and remitted payments from joint venture customers into the new account. (*Id.* ¶¶ 91-94.)  Funds were subsequently transferred from both the Citibank and HSBC accounts to Gravity India. (*Id.* ¶¶ 96, 99.)  In 2010, Singh and Gaur ceased operations through Gravity India. (*Id.* ¶ 103.)

### III. RELATED AGREEMENTS

In addition to the JVA, the parties entered into two other agreements relevant to the instant motion:  a Professional Management Agreement (the "PMA") and a Professional Consultancy Agreement (the "PCA").  Pursuant to the PMA, Resource Mine and Buchar, a CPA, agreed to manage Gravity USA's QuickBooks and accounts. (*Id.* ¶ 48.)  In exchange for these services, Gravity USA was required to make monthly payments of $2,000 to Resource Mine and $1,000 to Buchar.  (Pls.' Mot., Ex. 10 at 6, ECF No. 158-18.)  Pursuant to the PCA, each party

was required to "use their best efforts to hold all Confidential Information in confidence," and, except as may be required to perform services, to "use their best efforts to avoid disclosure of Confidential Information." (Pre-Mot. Conf. Ltr., Ex. A at 3, ECF 150-1.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 23 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than merely assert conclusions that are unsupported by arguments or facts. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

Before moving to any discussion on the merits, the Court cannot resist noting that Plaintiffs, who are represented by counsel, failed to mount even a rudimentary challenge to

Defendant's arguments. Indeed, much of Plaintiffs' arguments amount to little more than vacuous rants or puzzle piece-like arguments that are barely decipherable by the Court. None of the arguments made in opposition to the motion are supported by case law. In fact, not a single case is cited by Plaintiffs beyond the citations on page 7 of their 25-page brief.[3] With respect to the vast majority of their claims, Plaintiffs fail to proffer any facts that might operate to buttress them. Instead, Plaintiffs rely on the frequent refrain that Defendants failed to cite to facts supporting their arguments. It apparently escaped Plaintiff that ultimately the burden is theirs to prove up their claims. As such, Defendants can prevail at summary judgment by pointing to a lack of evidence supporting Plaintiff's claim. *See Celotex Corp.*, 477 U.S. at 325.

Candidly, Plaintiffs' submission is deserving of nothing more than a summary determination in Defendants' favor. *See Bank v. Alarm.com Holdings, Inc.*, No. 20-463, 2020 WL 5540559, at *2 (2d Cir. Sept. 16, 2020) (summary order) (finding the appellant's argument that the district court improperly dismissed his complaint without reasoning was meritless where the district court granted the defendant's motion to dismiss via a five word text order without any "written order, opinion, or . . . reasoning for its decision."). The Second Circuit "and other circuits have affirmed Rule 12 and 56 dismissals where the district court failed to explain its reasoning." *Id*. However, ever mindful of a potential appeal, and hoping to spare the Court of Appeals of the challenges faced in deciding this motion, the Court has undertaken an analysis of each claim. No doubt, the Court has given Plaintiffs' claims far more attention than that given by the Plaintiffs themselves.

---

[3] The Court is not considering the two cases cited later in the brief which are wholly unrelated to the merits of Plaintiffs' claims.

## I. Breach of Contract

Plaintiffs maintain that Defendants breached three agreements—the JVA, the PMA, and the PCA. (*See* Pls.' Opp. Br. ("Pls.' Mem.") 7-9, ECF No. 178-1.) A claim for breach of contract under New York law requires: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Hudson & Broad, Inc. v. J.C. Penney Corp., Inc.*, 553 Fed. App'x. 37, 39 (2d. Cir. 2014) (summary order).

In their opposition, Plaintiffs fail to articulate precisely how Defendants are alleged to have acted in breach of any of these agreements. Plaintiffs contend that: (1) Resource Mine breached the JVA by refusing to assign personnel to Gravity USA's projects; (2) Resource Mine and Buchar breached the PMA by failing to provide Plaintiffs with account details and providing Plaintiffs with invoices without details and in which Buchar lacked confidence; and (3) Resource Mine, Buchar, and Vyas breached the PCA by failing to maintain the confidentiality of certain material. (*See* Pls.' Mem. 7-9). Defendants argue that Plaintiffs have failed to proffer evidence to support any claimed breach. The Court agrees.

With respect to the JVA, Plaintiffs' claim rests precariously on a July 11, 2018 email from Buchar to Gravity. The email states: "Effective immediately, Resource Mine will not be able to assign any personnel to Gravity, who is not already on an ongoing project. In absence of a satisfactory payment arrangements [sic], Resource Mine reserves the right to approach the clients of the ongoing projects and request direct payment, for Resource Mine personnel that are currently assigned to such projects/client." (Pls.' Mot., Ex. 12 at 14-15, ECF No. 158-20.) As argued by Plaintiffs, the email evinces an "intent" to breach the JVA. (Pls.' Mem. 8.) Even if the court agreed–which it does not–still missing from the record is evidence of an actual breach.

Certainly, if Resource Mine in fact refused to provide personnel consistent with its obligations to do so, Plaintiffs would have some evidence demonstrating this failure.

With respect to the PMA, Plaintiffs argue in total that "Gravity USA asked [Resource Mine] to send account details, and all that [Buchar] sent was invoices, and even those invoices would not have detailed descriptions," and "[Buchar] himself expressed a lack of confidence in the numbers he was providing." (*Id*. 9.) Quite obviously, these two statements do not establish a breach. Nonetheless, Plaintiffs maintain that these facts create a material issue as to whether the PMA was breached. (*Id*. 8–9.) Simply put, Plaintiffs are mistaken.

Plaintiffs' efforts to demonstrate a breach of the PCA claim is even more paltry. There, Plaintiffs maintain only that Defendants failed to address this claim and failed to cite to evidence in the 56.1. (*Id*. 9.) Here again, Plaintiffs are mistaken. Defendants plainly address the alleged breach of the PCA in pages 15-16 of their memorandum of law and argue that Plaintiffs can adduce no evidence of a breach. (Mem. Law Supp. Pl. & Third Party Defs.' Mot. Summ. J. ("Defs.' Mem.") 15-16, ECF No. 177-1.) Defendant was correct in view of Plaintiffs' failure to make any evidence-based argument.

## II.     Breach of Fiduciary Duty

Plaintiffs maintain that Resource Mine and Buchar breached fiduciary duties owed to Gravity USA. (Pls.' Mem. 11–12.) To establish a claim for breach of fiduciary duty, a plaintiff must prove: "(1) the existence of a fiduciary relationship; (2) misconduct by defendant constituting a breach of its fiduciary duty to plaintiff; and (3) damages to plaintiff directly caused by defendant's misconduct." *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 726 F. Supp. 2d 291, 305–06 (S.D.N.Y. 2010), *aff'd in part,* 438 F. App'x 45 (2d Cir. 2011). Defendants argue that Plaintiffs have failed to establish any of these elements, warranting their dismissal. (Defs. Mem.

16–18.) While the Court agrees with Defendants' argument only in part, ultimately Plaintiffs claims fail.

First, Defendants argue that that no fiduciary relationship existed between Plaintiff and Defendants. On this point, the Court disagrees. "[P]artners and joint venturers owe each other fiduciary duties." *E-Glob. Alls., LLC v. Anderson*, No. 10 CIV. 2844 KMK PED, 2011 WL 8879268, at *8 (S.D.N.Y. May 11, 2011), *report and recommendation adopted*, No. 10-CV-2844 KMK PED, 2012 WL 3656042 (S.D.N.Y. Aug. 25, 2012). That said, where a "breach of fiduciary duty claim indeed arises from the duties imposed by [a contract], the claim is duplicative of the breach of contract claim, and is … subject to dismissal." *Barbara v. MarineMax. Inc.*, No. 12–CV–368 (ARR), 2012 WL 6025604, at *9 (E.D.N.Y. Dec. 4, 2012). Here, Plaintiffs' breach of fiduciary duty claim against Resource Mine arises out of Resource Mine's purported breach of the JVA. (Pls.' Mem. 11-12.) Because Plaintiffs have failed to demonstrate the existence of a fiduciary relationship between Plaintiffs and Resource Mine that is separate and apart from any duties created by contract, Plaintiffs' breach of fiduciary duty claim is duplicative of their breach of contract claims and must be dismissed. *See Snider v. Lugli*, No. 10-CV-4026 (SJF)(AKT), 2013 WL 888485, at *7 (E.D.N.Y. Mar. 7, 2013) (dismissing the plaintiff's breach of fiduciary duty claim because the plaintiff failed to identify the existence of a fiduciary duty between the parties that was separate from the duties created pursuant to their joint venture agreement).

As with Resource Mine, Buchar owed a fiduciary duty to Gravity USA. Defendants are correct that Buchar's status as Gravity USA's accountant alone is insufficient to render him a fiduciary. (Defs.' Mem. 16.) However, the commission of fraud by an accountant may give rise to a fiduciary duty. *See Tech. in P'ship v. Rudin*, 2011 WL 4575237, at *6 (S.D.N.Y. Oct. 4,

2011) (stating that "a relationship is fiduciary in nature based on the services agreed to by the parties and evidenced by influence, control, or responsibility over the client"); *id*. (citing *Vtech Holdings Ltd. v. PriceWaterhouseCoopers LLP*, 348 F. Supp. 2d 255, 268 (S.D.N.Y. 2004) ("In New York, the accountant-client relationship does not generally give rise to a fiduciary relationship absent special circumstances, such as the accountant's commission of active fraud on the client."). Here, it is undisputed that Buchar, a CPA and principal of Resource Mine, agreed to manage Gravity USA's QuickBooks accounts requiring a relationship of trust and good faith between him and Gravity. (Pls.' Reply 56.1 ¶ 48.) In other words, on the facts of this case, the Court finds that Buchar owed a fiduciary duty to Gravity USA. That fact alone, however, is insufficient to make out a claim for alleged breach of fiduciary duty.

Absent from the record is evidence of any breach by Buchar or evidence of any damages flowing from the purported breach. In some detail, Defendants argue that Buchar was under no obligation to produce invoices to Gravity USA as the data requested was already in Gravity USA's control. (Defs. Mem 17.) Rather than provide any arguments in support of a claimed breach, Plaintiffs' devote the entirety of their argument on this point to asserting that, in their view, Defendants are "confused" as to the contours of the claim. (Pls.' Mem.12.) Specifically, Plaintiffs state: "[Defendants] appear[] to have confused [Plaintiffs'] Fourth Third-Party Claim with another claim. As the foregoing quotation from [Plaintiffs'] Fourth Third-Party Claim makes clear, no such allegation is made." (*Id.*) For starters, Plaintiffs ignore the full statement by Defendants in favor of a snippet that does not reflect how Defendants fully set out the claim. In the Court's view Defendants aptly described the claim as it was presented by Plaintiffs. In any event, so what? Defendants argued that Plaintiffs failed to set forth evidence of breach of

fiduciary duty by either Resource Mine or Buchar. It was incumbent upon Plaintiffs to do so and they did not. The claims fail.

### III.   Aiding and Abetting Breach of Fiduciary Duties

Plaintiffs contend that Resource Mine and Buchar induced one another, and together induced Jaiswal, to breach their fiduciary duties owed Plaintiffs. (Pls.' Mem 14.) Not according to the record.

Under New York law, a claim for aiding and abetting a breach of a fiduciary duty requires: "[1] a breach by a fiduciary of obligations to another, of which the aider and abettor had actual knowledge . . . [2] that the defendant knowingly induced or participated in the breach, and . . . [3] that plaintiff suffered damage as a result of the breach." *In re Sharp Int'l Corp.*, 403 F.3d 43, 49–50 (2d Cir. 2005) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 125, 157 (1st Dep't 2003)).

Here, the record is devoid of any evidence of a breach by non-party Jaiswal, much less evidence of Defendants' inducement of such a breach. And, because as stated above Plaintiffs have failed to identify a breach of any fiduciary duty purportedly owed them by Resource Mine and Buchar, their claims for aiding and abetting of any breach of fiduciary duty by those Defendants also fail.

### IV.   Tortious Interference

Plaintiffs bring tortious interference claims under two theories – interference with contract and interference with prospective business relations. Neither can survive Defendants' motion.

To state a claim for tortious interference with contract, Plaintiffs must demonstrate: (1) the existence of a valid contract; (2) Defendants' knowledge of the contract's existence; (3)

that Defendants intentionally procured a contract breach; and (4) that Plaintiffs suffered damages as a result of the interference and subsequent breach. *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 124–25 (2d Cir. 2008). Similarly, to prevail on a claim for tortious interference with prospective business advantage under New York law, a plaintiff must demonstrate that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship."[4] *Id.* at 132.

In support of both theories of liability, Plaintiffs again rely exclusively on the July 11 Letter. There, Buchar states, in relevant part, that: "Effective immediately, Resource Mine will not be able to assign any personnel to Gravity, who is not already on an ongoing project. In absence of a satisfactory payment arrangements [sic], Resource Mine reserves the right to approach the clients of the ongoing projects and request direct payment, for Resource Mine personnel that are currently assigned to such projects/client." (Pls.' Mot., Ex. 12 at 14-15, ECF No. 158-20.) According to Plaintiffs, this email alone creates a genuine issue of material fact as to whether Resource Mine's refusal to assign personnel to Gravity, as communicated in the July 11 Letter, constituted wrongful means, the use of which interfered with Gravity's USA contracts with its clients, and whether Resource Mine's refusal to assign personnel prevented Gravity USA from acquiring new clients. (Pls.' Mem. 15-17.) It does not. And, even if the Court were to construe the July 11 Letter as Defendants' intention to interfere with Plaintiffs' contracts or business relations, Plaintiffs have failed to proffer evidence demonstrating that: any such

---

[4] New York courts have used the terms tortious interference with prospective business advantage, and tortious interference with business relations interchangeably to refer to this cause of action. *See Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002); *Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir. 1997).

interference actually occurred; any breach or disruption to business relations occurred because of such interference; they suffered any damages as a result. Accordingly, Defendants are entitled to summary judgment on this claim.

## V.     Conversion Claim

Defendants argue that Plaintiffs have failed to meet the evidentiary burden of their conversion claim because the record is devoid of evidence demonstrating that the client list constitutes "an identifiable tangible personal property," and that Defendants exercised control over the client lists or otherwise interfered with Plaintiffs' ability to contact clients on the list. (Defs.' Mem. 21-22.) Again, the Court agrees.

In New York, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403–04 (2d Cir. 2007) (citing *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995) (internal quotation marks omitted)). A plaintiff pressing a claim for conversion must demonstrate: "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Pappas v. Tzolis*, 20 N.Y.3d 228, 234 (2012).

Here, Plaintiffs again refer the Court to the July 11 Letter, this time highlighting that Resource Mine stated: "In the absence of a satisfactory payment arrangements [sic], Resource Mine reserves the right to approach the clients of the ongoing projects and request direct payment, for Resource mine personnel that are currently assigned to such projects/clients." (Pls.' Mot., Ex. 12 at 14-15, ECF No. 158-20.) From this letter, Plaintiffs argue, "Giving Gravity USA the favorable inference to which it is entitled, [Resource Mine] intended to use Gravity USA's list of workers to contact the latter's clients. At a minimum, the existence of such lists coupled

with Plaintiff's threat to contact Gravity USA's clients raise a question of fact as to whether [Resource Mine] made use of such lists to contact Gravity USA's clients." (Pls.' Mem. 19.) Wait . . . what? As a threshold matter, and as Defendants correctly note, Plaintiffs have adduced no evidence that any contact list even exits. Even assuming the existence of such lists, yet again, Plaintiffs have failed to provide the Court with any evidence sufficient to show that Defendants engaged in conduct in relation to the list that operated in derogation of Plaintiffs' rights.

**VI.   Fraud**

To establish a claim for fraud under New York law, a plaintiff must show that (1) the defendants misrepresented a material fact; (2) the defendants knew they were making a false misrepresentation; (3) the plaintiff justifiably relied on such misrepresentation; and (4) the plaintiff suffered harm as a result. *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 222 (2d Cir. 2006). Notably, each element of a fraud claim must be proved by clear and convincing evidence. *Ferreyra v. Arroyo*, 35 N.Y.3d 127, 128 (2020) ("Fraud must be proved by clear and convincing evidence").

The Court is running out of unique ways to indicate that Plaintiffs has failed to meet their burden because it adduced no evidence whatsoever to support their claim. Here again, Plaintiffs rely on conclusory, unsupported assertions of fact in a failed effort to create a triable issue. As to the fraud claim, Plaintiffs maintains that Defendants "were colluding with [Jaiswal] to steal Gravity USA's business . . . [t]hus falsely purporting that Gravity USA was delinquent in paying Plaintiff" as a pretext for the July 11 Letter. (Pls.' Mem. 20.) According to Plaintiffs, "at a minimum, there are questions of fact as to whether [Resource Mine] and [Buchar] sent false bills

[to Gravity] in furtherance of the conspiracy with Jaiswal." (*Id.*) To be clear, nothing here constitutes evidence of fraud.[5]

## VII. Accounting

Defendants contend that they are entitled to summary judgment on Plaintiffs' claim for an accounting because "there is no evidence of a fiduciary relationship or of [Plaintiffs'] damages to justify an accounting." (Defs.' Mem. 24.) Not so. A claim for an accounting requires: "(1) a fiduciary relationship (2) entrustment of money or property (3) no other remedy and (4) a demanded and refusal of an accounting." *Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*, 333 F. Supp. 3d 307, 315 (S.D.N.Y. 2018). Notably, parties in a joint venture generally have a right to an accounting upon dissolution of the venture. *Scholastic, Inc. v. Harris*, 259 F.3d 73, 90 (2d Cir. 2001) ("[u]pon notice of dissolution and the demand for an accounting, any partner has a right to an immediate accounting as of the date of dissolution"). Indeed, even where the requesting party "already possesses detailed financial information regarding the joint venture, there is nevertheless still 'an absolute right to an accounting.'" *Id.* (quoting *Koppel v. Wien, Lane & Malkin,* 509 N.Y.S.2d 327, 330 (1st Dep't 1986)). Because Resource Mine and Plaintiffs were parties to a joint venture, Plaintiffs are entitled to an accounting.

## CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is GRANTED in part, and DENIED in part.

---

[5] For the same reason, Plaintiffs' constructive fraud claim must also fail. Under New York law, a claim for constructive fraud requires "the same showing as actual fraud, except for one crucial aspect—the element of the defendant's scienter, or knowledge of the falsity of his or her representation, need not be proven." *Grand Union Mount Kisco Employees Fed. Credit Union v. Kanaryk*, 848 F. Supp. 446, 455 (S.D.N.Y. 1994). Rather, Plaintiffs must merely "prove the existence of a fiduciary or confidential relationship warranting the trusting party to repose his confidence in the defendant and therefore to relax the care and vigilance that he would ordinarily exercise in the circumstances." *Id.* Although both Buchar and Resource Mine owed a fiduciary duty to Gravity USA, Plaintiffs' constructive fraud claim nonetheless fails due to lack of evidence demonstrating the existence of a fraud.

SO ORDERED.

Dated: Brooklyn, New York
      November 30, 2020

/s/ LDH
LASHANN DEARCY HALL
United States District Judge