UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
THE RESOURCE MINE, INC.,

                        Plaintiff,

  -against-

GRAVITY MICROSYSTEM LLC,
GRAVITY MICROSYSTEM PRIVATE
LIMITED, VINAY PRAKASH SINGH,
VIVEK GAUR, NAVEEN KHARB and
JOHN DOES 1-10

                        Defendants.
-------------------------------------------------------------x
GRAVITY MICROSYSTEM LLC,

                        Third-Party Plaintiff

  -against-

DALIP BHUCHAR and
APOORVA VYAS a/k/a ALLEN VYAS,

                        Third-Party Defendants.

-------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
9-CV-573 (LDH)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court, on referral from the Honorable LaShann DeArcy Hall, is Plaintiffs' The Resource Mine, Inc. ("Resource Mine") and Third-Party Defendants Dalip Bhuchar ("Bhuchar") and Apoorva a/k/a Allen Vyas ("Vyas" and collectively "Plaintiffs") motion for sanctions pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 11, 26 and 37, as well as 18 U.S.C. § 401 against Defendant and Third-Party Plaintiff Gravity Microsystem LLC ("Gravity USA"), Defendants Gravity Microsystem Private Limited ("Gravity India"), Vinay Prakash

1

Singh ("Singh"), Vivek Gaur ("Gaur"), Naveen Kharb ("Kharb") and John Does 1-10 (collectively "Defendants"), and Defense Counsel Richard Pu, Esq. ("Pu" or "Defense Counsel"). *See* Plaintiffs' Motion for Sanctions Against All Defendants and Defendants' Counsel ("Pls.' Mot."), Docket Entry ("DE") [162]. For the reasons set forth herein, the Court respectfully recommends that Plaintiffs' motion be: (1) granted as to Defendants' and Defense Counsel's violations of this Court's January 31, 2017 Order, DE [118], and (2) denied on all other grounds.

I. BACKGROUND

A. Facts

Defendants Gaur and Singh operated Gravity India from 2003 to 2010, which provided information technology consulting services. *Res. Mine, Inc. v. Gravity Microsystem LLC*, No. 09CV0573LDHSIL, 2020 WL 7024379, at *1 (E.D.N.Y. Nov. 30, 2020). In 2005, Gravity USA was formed as a wholly-owned subsidiary of Gravity India. *Id*. Gravity USA had no individuals on its payroll, no capital infusion, no loans taken and no funds raised on its behalf. *Id*.

Resource Mine was a technology staffing company that operated from 2001 to 2010. *Id*.; *see also* Pl. Mot. Ex. E ¶¶ 1,15. One of its employees in India introduced Gaur and Singh to Bhuchar and Vyas, the principals of Resource Mine in the United States, and in early 2006, Resource Mine entered into a joint venture agreement (the "JVA") with Gravity USA. *See Res. Mine, Inc.*, 2020 WL 7024379, at *1. The partners agreed that: (1) Gravity India would identify, hire, and relocate potential employees from India to the United States if those employees were capable of being sponsored for immigration purposes; and (2) Resource Mine would apply for H1B visas for

2

employees, manage the payroll, and ensure compliance with applicable laws and regulations. *Id*. The JVA distinguished between two types of employees, which it referred to as shared and non-shared "resources." *Id*. at *2. Expenses related to shared resources were offset against any income from joint venture clients and included salaries, taxes, H1B visa application costs, and employee travel and housing. *Id*. Any remaining profit was to be split evenly between Resource Mine and Gravity USA. *Id*. For nonshared resources, Resource Mine paid expenses upfront, and Gravity India reimbursed it upon the presentation of invoices, and the only employees who were non-shared resources under the JVA were Defendant Kharb and Anupam Jaiswal ("Anupam"). *Id*. Resource Mine was required to pay the salaries of JVA resources even when those employees were not engaged on client projects. *Id*.

In addition to the JVA, the parties executed two other agreements: a Professional Management Agreement (the "PMA") and Kharb's employment agreement. *Id*. at *3.

The joint venture operated smoothly from 2006 to 2007, but in 2008, payments and reimbursements to Resource Mine for the non-shared resources were in arrears. *Id*. at *2. Between July 2008 and September 2008, Gaur and Singh directed customers to pay them directly to ensure that Resource Mine did not receive payments required under the JVA. *Id*. Kharb, an employee of Resource Mine, assisted Gaur and Singh in opening a new bank account for joint venture customer deposits at HSBC for the purpose of re-routing client payments away from Resource Mine. *See id*. All funds deposited in the HSBC account were funds paid by customers

3

to the joint venture. *Id*. Around this same time, Singh and his wife, a member of Gravity USA, opened a new Citibank account in Gravity USA's name and remitted payments from joint venture customers into the new account. *Id*. Funds were subsequently transferred from both the Citibank and HSBC accounts to Gravity India, and in 2010, Gaur and Singh ceased its operations. *Id*.

### B. Procedural History

By way of Complaint dated February 11, 2009, later modified by an Amended Complaint dated February 23, 2010, by a Second Amended Complaint dated November 11, 2010, and again by a Third Amended Complaint dated January 21, 2015, Resource Mine brought this diversity action against Gravity USA, Gravity India, Singh, Gaur, Kharb and John Does 1-10 for claims of conversion, breach of contract, tortious interference with contract, and unjust enrichment arising from their conduct and the dissolution of the joint venture. *See generally* DEs [1], [26], [46], and [77]. Defendants subsequently brought twelve counterclaims against Resource Mine asserting causes of action for conversion, breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, tortious interference with contract, tortious interference with prospective business advantage, fraud, constructive fraud and an accounting. *See* Answer to Third Amended Complaint and Counterclaim ("Answer and Counterclaims to TAC"), DE [88]. Defendants also alleged eleven third-party claims against Bhuchar and Vayas. *See id*. On December 11, 2015, District Judge Denis R. Hurley dismissed Resource Mine's claims for

4

conversion and breach of certain agreements against all Defendants.[1] *See* DE [86] at 5-7.

This Court was assigned to oversee discovery. *See* July 31, 2014 Electronic Order. After discovery closed, Resource Mine moved for summary judgment on its claims for breach contract against Gravity India, Gravity USA, and Kharb, and unjust enrichment against Gaur and Singh. *See* DE [158]. Judge Hall found that with respect to the JVA, Defendants Gravity India and Gravity USA breached the agreement and were jointly and severally liable in an amount to be determined at trial. DE [166] at 10-11; 15-16. The Court also determined that Defendants Gravity India and Gravity USA breached the PMA and are jointly and severally liable to Resource Mine in the amount of $20,948.61. *Id*. at 16-17. Regarding Kharb's employment agreement, material issues of fact remained preventing the Court from resolving the issue at summary judgment. *Id*. at 18-19. Finally, Resource Mine's claim for unjust enrichment was dismissed. *Id*. at 20-21.

Plaintiffs subsequently moved for summary judgment on all of Defendants' counterclaims and third-party claims. *See* DE [177]. The Court dismissed all of these claims with the exception that Defendants are entitled to an accounting because Resource Mine and Plaintiffs were parties to a joint venture. *See* DE [181] at 16.

Plaintiffs now move for sanctions based on five incidents, which they claim demonstrate "a pattern of sanctionable conduct" on behalf of Defendants and Defense Counsel. *See* Plaintiff's Memorandum of Law in Support ("Pls'. Mem."), DE [162-1],

---

[1] District Judge LaShann DeArcy Hall was subsequently assigned to this case on January 14, 2016. *See* Jan. 14, 2016 Electronic Order.

5

at 1. The motion is, in fact, three separate motions under different legal standards for: Rule 11 sanctions, discovery sanctions, and contempt of court. Plaintiffs are seeking damages for Defendants' conduct in the sum of $62,686.56, which is one third of Plaintiffs' total legal fees and expenses in this case plus the cost of Plaintiffs' rebuttal expert's report. Pls'. Mem. at 25; *see also* Pls'. Reply Ex. E, Part 2 at 2. Plaintiffs ask the Court to consider several factors, including that the case had been ongoing for over nine years when they filed the instant motion, discovery would have been shortened or limited on at least their breach of contract and unjust enrichment claims, and Plaintiffs would not have wasted significant time and fees defending against frivolous allegations all because of Defendants' and Defense Counsel's sanctionable conduct. Pls'. Mem. at 24.[2] For the reasons set forth below, the Court recommends Plaintiffs' motion be granted in part and denied in part.

## II. DISCUSSION

Plaintiffs allege five instances that demonstrate a pattern of "collective sanctionable conduct" on behalf of Defendants and Defense Counsel that have cost them significant time and expenses in this litigation. *See* Pls'. Mem. at 1-4. The Court addresses each claim under the applicable legal standard.

### A. Rule 11 Sanctions

Initially, Plaintiffs allege that, in violation of Rule 11, Defendants and Defense Counsel made false, misleading, and frivolous claims in their: (1) Amended Answer

---

[2] Defendants argue in their opposition that Plaintiffs' Counsel failed to submit contemporaneous billing records, which would prevent awarding attorney's fees. Defs'. Opp. at 14. Plaintiffs provide records from September 2008 through April 2017 and the invoice for its expert's rebuttal report on reply. *See generally* Pls'. Reply Ex. E.

6

and Counterclaims to the Complaint, DE [23]; (2) Answer and Counterclaims to the TAC, DE [88]; and (3) Local Rule 56.1 Statement ("Def. 56.1"), DE [132-1]. Defendants' Amended Answer and Counterclaims to the Complaint alleged that there were two JVA bank accounts at Chase and Bank of America respectively, and that Resource Mine would be reimbursed for expenses "provided there was money" in the accounts. DE [23] ¶ 13(e)(i)-(ii). Defendants also alleged that "payment by Gravity was conditioned on the availability of funds in the account." *Id*. ¶ 22(c). Additionally, Defendants' Answer and Counterclaims to the TAC claimed, "Around October of 2007, Gravity USA's clients defaulted in making payment" leaving inadequate money for reimbursement to Resource Mine under the JVA. *See* Def. Answer and Counterclaims to TAC ¶ 22. According to Plaintiffs, Defendants' allegations regarding the adequacy of funds in the accounts were discovered to be untrue and misled Plaintiffs to believe that JVA clients were delinquent, which would have been a viable defense, and "intentionally caused unnecessary distraction, alternate focus, extensive discovery, and legal time and expense in strategy and approach." Pls'. Mem. at 9-10.

Plaintiffs also claim that Defendants' Answer and Counterclaims to the TAC, in violation of Rule 11, contain false, frivolous, and exaggerated allegations of $11 million in compensatory and $25 million in punitive damages. *Id*. at 2, 11. Plaintiffs assert that Defendants had no supporting facts or law for such a high value and disproportionate ratio between compensatory and punitive damages, and that Defendants' expert report reduced their damages to between $895,000 and

7

$1,060,000. *Id*. at 11. Plaintiffs further allege that Defendants' eleven third-party claims and twelve counterclaims were unsupported by any evidence as shown as in Defendants' 56.1 Statement. *Id*. at 22. According to Plaintiffs, this wasted time and increased the cost of litigation because the lack of support prevented the Court from narrowing claims at the parties' pre-motion conference for summary judgment. *Id*. at 22-23.

> Fed. R. Civ. P. 11(b) provides in relevant part:
>
> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3). It further provides that, "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction . . . ." Fed. R. Civ. P. 11(c)(1). "[S]anctions should issue only in extraordinary circumstances . . . ," however. *Graves v. Deutsche Bank Sec. Inc.*, No. 07 Civ. 5471, 2010 WL 997178, at *7 (S.D.N.Y. Mar. 18, 2010) (internal quotation omitted). Ultimately, "[t]he imposition of sanctions by the court and the determination of the amount of the sanction is left to the court's discretion." *Gelfman Int'l Enters. v. Miami Sun Int'l Corp.*, No. 05-cv-3826, 2009 WL 2242331, at *10 (E.D.N.Y. July 27, 2009); *see also Lorber v. Winston*, 993 F. Supp. 2d 250, 253 (E.D.N.Y. 2014) ("[E]ven where a court determines that Rule 11(b) has been violated,

8

the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion.").

Pursuant to Rule 11, a motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service . . . ." Fed. R. Civ. P. 11(c)(2). This safe harbor provision requires that a party intending to move for sanctions serve a copy of the actual motion to be filed, and not merely a letter warning of the party's intent to seek sanctions. *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) ("An informal warning in the form of a letter without service of a separate Rule 11 motion is not sufficient to trigger the 21-day safe harbor period."); *see also Castro v. Mitchell*, 727 F. Supp. 2d 302, 307-08 (S.D.N.Y. 2010) ("Courts have held that even a letter detailing the nature of the conduct which purportedly violates Rule 11 and threatening to file a motion for sanctions cannot constitute notice under Rule 11."). It is well-established that "[a]ny motion seeking Rule 11 sanctions that does not comply with [the safe harbor] provisions must be denied." *Intravaia ex rel. Intravaia v. Rocky Point Union Free Sch. Dist.*, No. 12-cv-642, 2014 WL 7338849, at *3 (E.D.N.Y. Dec. 22, 2014); *see also Star Mark Mgmt.*, 682 F.3d at 175 (holding that Rule 11's safe harbor provision "is a strict procedural requirement"). Rule 11 also requires that a "motion for sanctions must be made separately from any other motion" or dismissal is warranted. Fed. R. Civ. P. 11(c)(2); *see McLeod v. Verizon New York, Inc.*, 995 F. Supp. 2d 134, 145 (E.D.N.Y. 2014); *Gym Door Repairs, Inc. v. Young*

9

*Equip. Sales, Inc.*, 444 F. Supp. 3d 484, 486-87 (S.D.N.Y. 2020) (adopting a report and recommendation denying Rule 11 sanctions that "improperly combined their Rule 11 motion with a motion under Rule 37, rather than making their Rule 11 motion separate from any other motion as Rule 11 requires").

Applying these standards, Plaintiffs' motion under Fed. R. Civ. P. 11 arguing that Defendants and Defense Counsel filed misleading and frivolous pleadings is procedurally improper and therefore should be denied. Although Plaintiffs appear to have satisfied Rule 11's safe harbor provision giving Defendants more than 21 days' notice before filing, *see generally* Pls'. Mot. DE [162], they did not bring the motion separately from their other applications under Rules 26, 37 and 18 U.S.C. § 401, which is plainly required under Rule 11. Accordingly, the Court recommends denying Plaintiffs' motion for Rule 11 sanctions.

### B. Discovery Sanctions

Next, Plaintiffs claim that Defendants served deficient interrogatory responses, including intentionally withholding requested information in violation of Fed. R. Civ. P. 26 and 37, Pls'. Mem. at 3, and as a result, sanctions are appropriate. Resource Mine's Interrogatory 11 requested that Defendants:

> Identify and describe in detail the circumstances and facts related to any Loans made by Gravity USA during the Relevant Period, and further identify the dates of each such Loans, the Property or dollar amount of each loan, all Persons to whom Gravity USA distributed proceeds of each loan, all collateral for each loan, the current repayment status of each such loan and all documents reflecting each Loan.

Pl. Mot. Ex. G ¶ 11. Defendants "object[ed] on the grounds of relevance and that the question is unduly burdensome." *Id*.

10

Interrogatory 12 requested that Defendants:

> Identify the full name and complete address of each bank or similar institution in which Gravity USA maintained any type of checking or deposit account or from which Gravity USA had borrowed money and the account and/or loan number for each such account and/or loan that was used by Gravity USA during the Relevant Period.

*Id.* ¶ 12. Defendants again objected on the grounds that the interrogatory was "unduly burdensome," but supplied information for two bank accounts at Chase and Bank of America used for the joint venture. *Id.*

In support of their motion for sanctions, Plaintiffs assert that Defendants intentionally failed to disclose Gravity's HSBC and Citibank accounts as well as loan transfers that Defendants used to divert funds from Resource Mine in their responses to Interrogatories 11 and 12. Pls.' Mem. at 19-20; *see also* Pls'. Mot. Ex. G ¶¶ 11-12. Plaintiff further claims that disclosure of the other accounts would have obviated the need to subpoena HSBC, and Resource Mine argues it would have moved for summary judgment on its unjust enrichment claims years earlier in this litigation had proper responses been given. Pls'. Mem. at 21.

Pursuant to Rule 26, every discovery response must be signed by an attorney or party, which certifies that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the response is:

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

11

Fed. R. Civ. P. 26(g)(1)(B). "The rule simply requires that one attorney make a reasonable inquiry into the factual basis of his response . . . . The duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances." Fed. R. Civ. P. 26, Adv. Comm. 1983 Amendment. If a certification violates Rule 26 without "substantial justification" the court "must impose an appropriate sanction on the signer," which may include reasonable expenses and attorney's fees. *Id.* at 26(g)(3).

Rule 37(c) provides that where "a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Sanctions under Rule 37 are also warranted where a party fails to comply with a Court's discovery order. Fed. R. Civ. P. 37(b)(2). The court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." *Id.* at 37(c)(1)(C). While a showing of prejudice or bad faith is not a prerequisite for Rule 37 sanctions, it is certainly a consideration that informs the Court's discretion. *See Metro. Opera Ass'n v. Local 100, Hotel Emples. & Rest. Emples. Int'l Union*, 212 F.R.D. 178, 229 (S.D.N.Y. 2003) (noting that prejudice is not required, but finding that the movant there showed prejudice, which "weigh[ed] in favor of a severe sanction"). Several factors are used to evaluate whether imposition of discovery sanctions is appropriate, including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the

efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *S. New England Tel.Co. (SNET) v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). The district court has "wide discretion" in imposing sanctions under Rule 37. *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007).

Applying these standards, the Court recommends that Plaintiffs' motion for discovery sanctions be denied. Initially, the two interrogatories at issue are difficult to follow. They both refer to a "Relevant Period," which is not defined, creating an ambiguity in the requests. Defs'. Opp. at 11. Without this definition it is not possible to conclude that Defendants' responses are sufficiently improper to warrant sanctions. This is especially so where no motion to compel was made in the first instance, which may have cleared up the issue. Moreover, Plaintiffs have not presented evidence that this failure to disclose was intentional or in bad faith, and the information at issue was subsequently obtained after further discovery. *See* Pls'. Mem. at 12-13. For these reasons, sanctions are inappropriate, and the Court recommends this portion of Resource Mine's motion also be denied.

### C. Contempt Sanctions

Finally, Plaintiffs allege that Defendants failed to comply with and repeatedly violated this Court's January 31, 2017 Order, and as a result, a contempt sanction is appropriate under 18 U.S.C. § 401. Pls'. Mem. at 7-8. This Order was entered in response to Defendants' motion to compel Resource Mine's QuickBooks files for its

expert, a forensic accountant, to complete his report. DE [115] at 3-4. The Order stated:

> Plaintiff will produce Resource Mine's Quickbooks files to defense counsel and Defendants expert Mr. Quintero for review on or before February 14, 2017. If upon review defense counsel believes that certain entries are relevant to the litigation, he must first identify all of these entries to Ms. Bhouraskar, [opposing counsel,] so that she may discuss with her clients whether they object to these entries being disclosed to Defendants. Defense counsel will make these disclosures to Plaintiff's counsel on or before February 28, 2017. Plaintiff's counsel will advise defense counsel whether Plaintiffs have any objections to disclosure to Defendants on or before March 14, 2017. The parties may then submit motions as appropriate after holding a meet and confer.

*See* Jan. 31, 2017 Minute Order, DE [118]. After this Order was entered, Plaintiffs claim that not only did Defense Counsel represent that their expert shared Resource Mine's QuickBooks with Defendants in error, but the expert also used all of the unauthorized content in the report rather than the agreed-upon information. Pls'. Mem. at 8. Plaintiffs allege that Defense Counsel knew or should have known of these repeated violations since the expert's report "was primarily focused on the use of the unauthorized information," and Resource Mine incurred substantial professional fees and expenses in its rebuttal expert report. *Id.*; *see also* Pls'. Reply Ex. E, Part 2 at 2.

Under 18 U.S.C. § 401, "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." A district court may use its civil contempt powers "to enforce compliance with an order of the court or to compensate for losses or damages

14

sustained by reason of noncompliance." *Weston Cap. Advisors, Inc. v. PT Bank Mutiara, Tbk*, 738 F. App'x 19, 22 (2d Cir. 2018) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499 (1949)). Compensatory sanctions should reimburse the injured party for its actual damages. *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989). To justify a civil contempt order, "a movant must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *King v. Allied Vision*, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995).

Applying these standards, the Court recommends a finding of contempt and imposing sanctions against Defendants and Defense Counsel for their violations of the January 31, 2017 Order. The evidence clearly and convincingly establishes that although the initial violation when Defendants' expert disclosed the information to Defendants may have been inadvertent, *see* Defs'. Opp. at 3-4; Defs'. Opp. Ex. 3, the expert's subsequent use of Plaintiffs' unauthorized QuickBooks files in several instances throughout its report shows that Defendants and Defense Counsel made no reasonable attempt to comply with this Court's Order, even after their first violation. Resource Mine only authorized use of two spreadsheets that Defense Counsel identified as relevant to the matter. Defs'. Opp. Ex. 4. Rather than deny that the expert used all of the improperly disclosed QuickBooks files for the report, Defendants claim that Defense Counsel "had permission to disclose the information transmitted by the expert," Defs'. Opp. at 4, but the email unambiguously states,

15

"Bhuchar has confirmed that you may disclose the two spreadsheets described in your email below to the defendants . . . ." *Id.* Defendants and Defense Counsel either knew or should have known by reviewing the expert's report that its analysis was based on unauthorized information, Pls'. Reply at 2-3, which demonstrates that their actions were intentional and in bad faith. Moreover, Plaintiffs' expert dedicated several portions of the rebuttal report identifying and responding to unauthorized use of Resource Mine's QuickBooks files. *See* Pls'. Mot. Ex. J at 6-7, 9-11.

Even if a contempt finding were inappropriate, however, and although Plaintiffs do not invoke it, a sanction would also be warranted under Rule 37 for failing to comply with this Court's discovery order. *See* Fed. R. Civ. P. 37(b)(2); *Raimey v. Wright Nat. Flood Ins. Co.*, 76 F. Supp. 3d 452, 473 (E.D.N.Y. 2014) (The district courts have broad discretion to impose sanctions under Rule 37(b)(2), because the Rules are intended to allow discovery to proceed without the delay and costs caused by constant court involvement, and "[w]hen a party seeks to frustrate this design by disobeying discovery orders . . . severe sanctions are appropriate.") (quoting *Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991)). Alternatively, sanctions would be appropriate under the Court's inherent power because Defendants' actions violating the Order were intentionally improper. *See Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 367 (E.D.N.Y. 2013) (The exercise of such inherent power, "requires the [movant] to present 'clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes.'") (quoting *Oliveri v.*

16

*Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986)). Accordingly, the Court recommends that Defendants be sanctioned for their repeated violation of the January 31, 2017 Order, and Plaintiffs be awarded the costs associated with the preparation of their expert's rebuttal report in the amount of $5000. *See* Pls'. Reply Ex. E, Part 2 at 2.

### III. CONCLUSION

Based on the foregoing, the Court recommends that Plaintiff's motion for sanctions be: (1) granted as to Defendants' and Defense Counsel's violations of this Court's January 31, 2017 Order and that Defendants pay Plaintiffs' fees for their expert rebuttal report; and (2) denied on all other grounds.

### IV. OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
      January 7, 2022                 /s/ Steven I. Locke
                                        STEVEN I. LOCKE
                                        United States Magistrate Judge