UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THE RESOURCE MINE, INC.,

                      Plaintiff,

-against-

GRAVITY MICROSYSTEM LLC, GRAVITY MICROSYSTEM PRIVATE LIMITED, VINAY PRAKASH SINGH, VIVEK GAUR, JOHN DOES 1-10, and NAVEEN KHARB,

                      Defendants.

**ORDER ADOPTING REPORT AND RECOMMENDATION**
09-CV-0573 (LDH) (SIL)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

      Gravity Microsystem LLC ("Gravity USA") and Gravity Microsystem Private Limited ("Gravity India") (collectively, "Defendants") brought the instant action against The Resource Mine, Inc. ("Resource Mine" or "Plaintiff") asserting counterclaims and third-party claims under New York law for conversion, breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, tortious interference with contract, tortious interference with prospective business advantage, fraud, constructive fraud, and an accounting.[1]  On November 30, 2020, the Court granted Plaintiff's motion for summary judgment as to all of Defendants' counterclaims, with the exception of their claim for an accounting.  *See The Resource Mine, Inc. v. Gravity Microsystem LLC et al.*, 09-cv-0573, 2020 WL 7024379, *1 (E.D.N.Y. Nov. 30, 2020).  The Court referred the accounting to Magistrate Judge Steven I. Locke for Report and Recommendation.

---

[1] Defendants also asserted counterclaims against Third-Party Plaintiffs Dalip Buchar and Allen Vyas.

1

## BACKGROUND[2]

Now entering its fifteenth year, this litigation stems from a failed Joint Venture Agreement (the "JVA") between Resource Mine, a technology staffing company, and Gravity USA.  Gravity USA was established in 2005 as a wholly owned subsidiary of Gravity India, a provider of information technology consulting services.  At all relevant times, both Gravity India and Gravity USA operated under the direction of Defendants Gaur and Singh.

In general terms, the JVA called for Gravity India to identify potential employees in India; hire those employees in India; and relocate them to the United States, assuming that those employees were capable of being sponsored for immigration purposes by Resource Mine.  (Pl.'s Reply 56.1 Supp. First Mot. Summ. J. ("Pl.'s Reply 56.1"), ¶ 22, ECF No. 142.)  Resource Mine, meanwhile, was responsible for securing H1B visas for employees, managing payroll, and ensuring the joint venture's compliance with applicable laws and regulations.  (*Id*. ¶ 30.)  Relatedly, the parties also entered into a Professional Management Agreement (the "PMA"), under which Resource Mine would manage Gravity USA's QuickBooks and accounts. (*Id*. ¶ 48; Pl.'s Mem. L. Supp. First Mot. Summ. J. ("Pl.'s Mem."), Ex. 10, ECF No. 158-18).

The JVA distinguished between two types of employees: (1) "shared resources"; and (2) "non-shared resources."  (Pl.'s Reply 56.1 ¶ 41–42.)  Expenses related to shared resources— including salaries, taxes, the cost of H1B applications, and employee housing—would be offset against income derived from clients of the joint venture ("JV Clients"), after which any remaining profit would be divided evenly among the parties.  (*Id*. ¶¶ 41, 49.)  For non-shared

---

[2] A more fulsome history of this case can be found in this Court's decision on Plaintiff's second motion for summary judgment.  *See The Resource Mine, Inc. v. Gravity Microsystem LLC et al.*, 09-cv-0573, 2020 WL 7024379, *1 (E.D.N.Y. Nov. 30, 2020) ("*Gravity II*").

resources, however, Resource Mine was required to pay expenses up front, and then present invoices to Gravity India for reimbursement.  (*Id*. ¶ 50.)

The joint venture operated without issue from its founding in 2006 until 2008, when payments and reimbursements to Resource Mine for the non-shared resources fell into arrears.  (*Id*. ¶ 55.)  On July 11, 2008, Resource Mine notified Defendants Gaur and Singh that the total arrearage had reached $74,763.52, and that "[e]ffective immediately, Resource Mine [would] not be able to assign any personnel to Gravity, who [was] not already on an ongoing project."  (Pl.'s Mem., Ex. 12, ECF No. 158-20.)  Resource Mine further cautioned that unless arrangements were made to satisfy the debt, it reserved the right to request payment from any JV Clients with Resource Mine personnel assigned to their projects.  (*Id*.)  Hoping to avoid this eventuality, Gaur and Singh responded by instructing the JV Clients to pay them directly—thus diverting the funds away from Resource Mine—after which the proceeds were routed through various backchannels to Gravity India.  (*Id*. ¶¶ 72–73, 77–79, 83, 96, 99.)

Resource Mine subsequently filed this diversity action on February 11, 2009, alleging state law conversion, breach of contract, tortious interference with contract, and unjust enrichment claims.  (*See* Third Am. Compl. at 19-27, ECF No. 77.)  Defendants counterclaimed for conversion, breach of contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, tortious interference with contract, tortious interference with prospective business advantage, fraud, constructive fraud, and an accounting.  (*See* Answer to Third Am. Compl. and Counterclaim at 27-39, ECF No. 88.)  Following several years of discovery, Resource Mine moved for summary judgment on its breach of contract and unjust enrichment claims.  The Court granted summary judgment in part, finding among other things that Gravity India and Gravity USA were joint and severally liable to Resource Mine for

breaches of the JVA and PMA.  (*See* Mem. and Order ("*Gravity I*"), ECF No. 166.)

Plaintiff then moved for summary judgment on Defendants' twelve counterclaims, which the Court granted as to all but Defendants' accounting claim.  *See The Resource Mine, Inc. v. Gravity Microsystem LLC et al.*, 09-cv-0573, 2020 WL 7024379, at *8 (E.D.N.Y. Nov. 30, 2020) ("*Gravity II*") (concluding that, as parties to a dissolved joint venture, Defendants were entitled to an accounting as a matter of law).  On January 18, 2022, Plaintiff indicated that it no longer wished to proceed to trial, and the Court, finding that Defendants had no remaining counterclaims that presented triable issues of fact, ordered the case closed.  (*See* Minute Order, Mar. 31, 2022.)

On April 1, 2022, Defendants sought a hearing on their claim for an accounting.  (*See* Defs.' Apr. 1, 2022 Ltr. Mot., ECF No. 206.)  On June 2, 2022 Plaintiff submitted an independent accounting (the "Master Report") showing that it was entitled to recover $81,249.72 from Gravity USA.  (*See* Pl.'s June 2, 2020 Ltr. ("Pl.'s Ltr."), Ex. A, ECF 207-1.)  The Court referred the matter to Judge Locke for report and recommendation.  (*See* Minute Order, June 9, 2022.)  Following a hearing on July 28, 2022, Judge Locke ordered Defendants to submit an offer of proof as to "how and why [they] intend[ed] to attack the accounting already submitted to the Court," noting that he would not "permit Defendants to re-litigate any issue already decided by [the] Court, including the merits of any dismissed counterclaims." (*See* Report and Recommendation ("R&R") at 8, ECF No. 235.)  Defendants submitted an initial offer of proof on August 11, 2022, and two amended offers of proof on August 15, 2022, which Plaintiff opposed.  (*Id*. at 2.)  On November 2, 2022, another hearing was held concerning the accounting, and on November 21, 2022, Judge Locke issued his recommendation that this Court adopt Plaintiff's accounting in full.  (*Id*. at 6, 9.)  Defendants

filed a timely objection to the R&R on December 5, 2022.[3]  (Defs.' Objs. to R&R ("Defs.' Objs."), ECF No. 236-7.)

## STANDARD OF REVIEW

When deciding whether to adopt a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  The Court conducts a *de novo* review of those portions of a report and recommendation to which a party submits a timely objection.  *Id*.  "To accept those portions of the report to which no timely objection has been made, 'the district court need only satisfy itself that there is no clear error on the face of the record.'"  *Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (quoting *Urena v. New York*, 160 F. Supp. 2d 606, 609–10 (S.D.N.Y. 2001)).

## DISCUSSION

In the fitting words of Judge Locke, "this case has a long and tortured history."  (*See* Electronic Report and Recommendation, July 28, 2022.)  Defendants, in particular, have a well-documented history of "advancing frivolous arguments and wasting the Court's time."  (*See* Minute Order, Aug. 12, 2021.)  Apparently undeterred by prior admonishments, they now continue that trend here, throwing everything but the proverbial kitchen sink at the wall to see what sticks.  Nothing does.

Defendants first contend that Judge Locke improperly prevented them from relitigating their dismissed counterclaims in the proceedings below, because "Judge Hall [i.e., the Court]

---

[3] In filings dated December 14, 2022, December 26, 2022, and December 27, 2022, the parties continued to respond to the R&R in additional memoranda.  (*See* ECF Nos. 237–239.)  As was stated in the R&R, the deadline for objections to the R&R was December 5, 2022, 14 days after it was published.  (*See* R&R at 9); *see also* 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  The Court therefore does not consider any submissions made after that deadline.

plainly wished to permit Defendants to relitigate issues raised by the dismissed counterclaims in the accounting."[4] (Defs.' Objs. at 2.) The Court can make short work of this argument: No, it did not.

Defendants' remaining objections to the R&R are premised on a thinly sourced—and, quite frankly, mystifying—argument that the Master Report submitted by Plaintiff is not a true accounting. According to Defendants, the Master Report is deficient in the following ways: (1) it does not "purport to be" an accounting; (2) the accounting was not made at a hearing; (3) it does not offer to disgorge any ill-gotten gains; and (4) the Court made no findings regarding the accounting. (*See* Defs.' Objs. at 3–5.) The Court will address each argument in turn.

*First*, Defendants argue that the Master Report cannot be regarded as a proper accounting because the document—which is titled "Independent Accountant's Report"—"doesn't purport to be" an accounting. (*See* Defs.' Objs. at 3.) Really? The document was authored by Khozem Master, a "Certified Public Accountant." (*See* Pl.'s Ltr., Ex. A.) By the Court's tally, the word "account," or some variation thereof, appears throughout the document more than thirty times. And, most importantly, the Master Report expressly states that it was prepared for the purpose of "presenting the balance sheet and income and expenses of [t]he Resource Mine / Gravity Microsystem Joint Venture in the format in accordance with the prevailing accounting practice." (*Id.*) In other words, the document is an accounting.

*Second*, Defendants maintain that the R&R cannot be adopted because "Plaintiff's accounting was not made at a hearing." (Defs.' Objs. at 3.) But, curiously, in the very next breath, Defendants admit that Judge Locke did, in fact, "schedul[e] a hearing . . . for conducting an accounting." (*Id.*) Indeed, the R&R confirms that Defendants submitted three offers of proof

---

[4] This matter has been before the Court since January 14, 2016. Yet, Defendants, after seven years of motion practice, apparently remain unaware that it is not "Judge Hall," but rather "Judge *DeArcy* Hall."

for the purpose of challenging the Master Report's perceived shortcomings, after which Judge Locke "held a hearing on the accounting based on Defendants' submission." (R&R at 6–7.) Yet, at the hearing, Defendants did nothing to "address the sufficiency of Plaintiff's proffered accounting." (*Id*. at 8.) Nor did Defendants "provide any documentation or proposed expert testimony . . . challenging Plaintiff's calculations as to the joint venture's total assets or liabilities during its existence[.]" (*Id*. at 8.) And, when given the chance to "call their own accountant to testify or attempt to challenge Plaintiff's accounting," Defendants replied that they did not intend to do so. (*Id*. at 9.) There was a hearing on the accounting. Defendants simply chose not to avail themselves of it.

*Third*, Defendants challenge the sufficiency of the Master Report because it fails to "compel the disgorgement of ill-gotten gains." (Defs.' Objs. at 4.) Specifically, Defendants assert that there were "significant" ill-gotten gains resulting from Plaintiff's sales to Gravity USA's clients.[5] (*Id*.) Defendants assert this in bare terms. Moreover, the case law upon which they rely merely holds that disgorgement is available as a remedy in federal district courts, not that an accounting necessarily compels it. See *S.E.C. v. Cavanagh*, 445 F.3d. 105, 121 (2d Cir. 2006) ("Because chancery courts possessed the power to order equitable disgorgement in the eighteenth century, we hold that contemporary federal courts are vested with the same authority by the Constitution and the Judiciary Act."). As Judge Locke correctly notes, an accounting determines the allocation of assets through "expert testimony and supporting documentation as to the parties' calculations." (*See* R&R at 7 (citing *Quick v. Quick*, 100 A.D.3d 611, 612–613 (2d Dep't 2012 ).) Defendants chose to forgo both.

---

[5] Defendants appear to refer to Gravity USA as "Green Logic" for reasons that are unclear to the Court. (*See* Defs.' Objs. at 4 ("[T]he Master[] report doesn't even acknowledge the sales to Green Logic's clients, never mind offer to disgorge the revenues received thereby.").)

7

*Fourth*, and finally, Defendants claim that the R&R cannot be adopted because there were "no findings by the Court." (Defs.' Objs. at 4–5.) In fact, Judge Locke found that Plaintiff's accounting stands. And, for the avoidance of doubt, this Court finds the same.

## CONCLUSION

Having reviewed the R&R for clear error and, finding none, the Court hereby ADOPTS the R&R in its entirety as the opinion of this Court.

SO ORDERED.

Dated: March 31, 2023
      Brooklyn, New York        /s/ LDH
                                       LaSHANN DeARCY HALL
                                       United States District